IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZINDORA CRAWFORD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| VERIZON PENNSYLVANIA, INC. | : | NO. 14-3091 |

MEMORANDUM

Dalzell, J.                                                                                     April 13, 2015

Zindora Crawford, an African-American woman, filed suit over the circumstances of her 2012 suspension from Verizon Pennsylvania, Inc. ("Verizon") and her ultimate resignation in 2014.  She claimed disparate treatment, disparate impact, constructive discharge and retaliation, as well as violations of the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance.  She brings her case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981.  We have federal question jurisdiction over Crawford's discrimination claims under 28 U.S.C. § 1331 and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

Verizon moved for summary judgment.  For the reasons set forth below, we will deny Verizon's motion in part and grant it in part.

## I.      **Legal Standard**

Summary judgment is warranted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party moving for summary judgment bears the burden of proving no genuine issue of material fact exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986).  To that end, the movant must inform the district court of the basis for its argument by "identifying those

portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact," <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).   Where the movant is the defendant or the party that does not have the burden of proof on the underlying claim, it "has no obligation to produce evidence negating its opponent's case," <u>National State Bank v. Federal Reserve Bank of New York</u>, 979 F.2d 1579, 1582 (3d Cir. 1992). The movant need only point to the lack of evidence supporting the non-movant's claim.  <u>Id.</u>

The reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  <u>Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.</u>, 470 F.3d 535, 538 (3d Cir. 2006).   A factual dispute is "genuine" if it turns on "evidence on which the jury could reasonably find for the plaintiff." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  <u>Id.</u> at 248.  That is, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude" summary judgment.  <u>Boyle v. County of Allegheny Pennsylvania</u>, 139 F.3d 386, 393 (3d Cir. 1998) (quoting <u>Anderson</u>, 477 U.S. at 248).  The court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts.  <u>Anderson</u>, 477 U.S. at 249.

> [T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

<u>Celotex</u>, 477 U.S. at 322.

If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to judgment as a matter of

law.  Id.  The nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  It is well-established that Rule 56 obliges the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324 (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c).

Specifically, Rule 56(e) provides in relevant part that "[i]f a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

## II.      Factual and Procedural Background

Verizon hired Crawford on January 26, 2004 and she worked as a Consultant until August 8, 2012.  Def. Statement of Undisputed Facts ("SUF") at ¶ 1.  Her second-level supervisor was Office Manager John Nicholson, who oversaw the Team Leaders who supervised Consultants.  Id. at ¶ 3.  On August 7, 2012, Crawford was arrested on 112 counts of Pennsylvania statutory violations including twelve counts of intentional theft of services, twelve counts of unauthorized use of a password, identifying code or personal identification number, and twelve counts of unlawfully using a computer to alter or erase data.  SUF at ¶ 5; see also MSJ, Ex. A (Crawford Dep.) at 54:20-51:25.  The same day, the Montgomery County District Attorney issued a press release naming Crawford and three other Verizon employees (Technicians Richard Spraggins, Frank Provenzano and Joseph Dolan) in connection with a scheme to defraud Comcast Cable Corporation through the application of issuing unauthorized

discounts to customers' bills and he issued an affidavit of probable cause on April 12, 2012. SUF at ¶¶ 4, 6; see also MSJ, Ex. A, pt. 5 at 1, 2.  The three other Verizon employees were arrested and charged with criminal counts similar to those filed against Crawford.  SUF at ¶ 7.

The day Crawford was arrested her Team Leader, Drena Black, spoke with Nicholson about Crawford's arrest in connection with her alleged involvement in the Comcast scheme.  Id. at ¶ 8.  The next morning Nicholson alerted his supervisor, Michael Billups, and called Bill McCloskey, a security officer.  Id.  McCloskey and a local manager telephoned Cynthia Marinari, Senior Consultant-Labor Relations, to inform her of the details of the scheme and that it involved four Verizon employees.  Id. at ¶ 9.

The four Verizon employees were suspended.  Id. at ¶ 10.  Neither party disputes that at the time of Crawford's arrest Marinari was unaware of Crawford's race.  SUF at ¶ 11.  On August 8, 2012, Nicholson suspended Crawford (and supervisors for the other three employees did the same).  Id. at ¶ 13.

However, the parties dispute who at Verizon made the suspension decision and what its intended duration was.  Verizon contends Marinari decided (based on the severity of the alleged criminal conduct, the employees' arrests, and the fact that their positions at Verizon gave them access to customer databases and the Verizon facility) to suspend all four employees indefinitely pending the outcome of the criminal investigation.  Id. at ¶¶ 10, 11.  Crawford maintains that Marinari recommended to Nicholson that he indefinitely suspend Crawford, but left the ultimate decision as to each employee to their local management of each employee.  Pl. Resp. to SUF at ¶¶ 10, 11.  She also contends that Verizon originally suspended her pending its own investigation, which determined within a short period that no Verizon services had been compromised, Pl. SUF at ¶¶ 68-70, but Verizon now takes the position it was awaiting the

outcome of the police investigation into the allegations against her.  Mem. in Opp. at Ex. C (Marinari Dep.) at 29:9-16; 44:14-15; 45:16-23.

On September 20, 2012, the Communication Workers of America, Local 13500, the union representing Crawford, filed a grievance over her indefinite suspension but was not able to pursue the grievance past level three because Verizon representatives maintained that the matter was under investigation.  SUF at ¶ 18; see also Pl. Resp. to SUF at ¶ 18 and Ex. E (Christmas Decl.) at ¶ 15.

On October 25, 2012, Crawford filed a charge of discrimination with the Philadelphia Commission on Human Relations ("PCHR") and the Equal Employment Opportunity Commission ("EEOC") stating that she had been suspended because of her race.  SUF at ¶¶ 29, 30.  In her complaint, Crawford stated that Nicholson suspended her indefinitely and said he "had to do it" because of allegations of criminal fraud that  Crawford disputes.  Id. at ¶ 30.  She contends that Nicholson's explanation is untrue because in February of 2012 Verizon had monitored a white employee, Amy Toth, for applying illegal discounts and adding unauthorized products to Verizon customers' accounts in order to get a higher monthly bonus, but that Nicholson failed to suspend her.  Id.  (On November 15, 2013, the PCHR sent Crawford a Dismissal and Notice of Rights, as did the EEOC on March 3, 2014.  Id. at ¶ 31.)

On November 20, 2012, Crawford filed an internal complaint against Verizon of race discrimination arising from the Comcast allegations.[1]  Id. at ¶ 19.  In her complaint, she stated:

I was suspended indefinitely on Aug 8, 2012 by John Nicholson

---

[1] She also disputes the circumstances of her six-and-a-half-day suspension in September of 2011 for allegedly hanging up on customers.  Pl. Resp. to SUF at ¶ 38. Thereafter, she filed an internal complaint against Nicholson and three Team Leaders because, she alleged, they were telling other Consultants on the floor that she had been terminated or was suspended indefinitely and would not be returning.  Id. at ¶ 39.  An HR employee reassured her that Verizon's policy forbade retaliation.  Id. at ¶ 40.

> which he stated was due to allegation of criminal fraud.  I am still
> not back at work and the reason . . . is because of Cindy Maranari
> [sic] who is the labor relation manager who John has advised is the
> reason.  John and Cindy are good friends and she supports his
> unfair discipline of black employee[s] in our office.

MSJ, Ex. A, pt. 12.  Crawford also alleged her co-worker Toth was "defrauding Verizon on a

monthly basis by collecting a month[l]y bonus by adding illegal discounts to customers['] 

account[s] that do not qualify for them," id., and she maintained Nicholson turned a blind eye to 

these actions.  Id.

Verizon contends that when she made the complaint Crawford was aware that two of the 

other employees suspended in the Comcast matter were Caucasian and one was African-

American.  SUF at ¶ 20.  However, Crawford disputes this as well as the relevance of the other 

employees' racial composition as she contends that three other supervisors decided to suspend 

those three employees -- who are employed as Technicians (not Consultants) and are members of 

a different union.  Pl. Resp. to SUF at ¶ 20.

The parties do not dispute that the other three employees were offered and took voluntary 

buyouts, which were not offered to any Consultants (such as Crawford) or to any employees in 

her group.  SUF at ¶ 36.

On May 9, 2014, prior to trial and after her initial request for the Accelerated 

Rehabilitative Disposition ("ARD") program was denied, Crawford was accepted into that 

program.  SUF at ¶ 26.  The Montgomery County District Attorney approved her for the program 

in exchange for Crawford's agreement to (1) serve four years' probation; (2) pay restitution of 

$1,000 to Comcast; (3) perform 100 hours of community service; (4) co-operate with the District 

Attorney's Office and testify truthfully against her co-defendants; and (5) pay costs and fees for

the ARD program.[2]  Id.

   The parties dispute the circumstances under which Verizon would have rehired Crawford.
Verizon offers as undisputed its contention that "[i]f the charges against [Crawford] had been
dismissed or she was found not guilty, Verizon would have returned her to work with full back
pay and benefits."  SUF at ¶ 28 (citing to Marinari's deposition).  However, Crawford points
elsewhere in Marinari's testimony where the Verizon manager stated that "[i]f all charges were
dropped, we would have returned her and made her whole."  Mem. in Opp., Ex. C at 117:25-
118:1.

   On June 4, 2014, after nearly two years of unpaid suspension, Crawford left Verizon
under circumstances that the parties also dispute -- that is to say, the defendant characterizes
Crawford's departure as a resignation, SUF at ¶ 27, but she calls it a constructive discharge.  See
Pl. Resp. to SUF at ¶ 27.

   On June 2, 2014, Crawford filed the present suit against Verizon.

---

[2] As we explained in our November 3, 2014 Order, the Pennsylvania Code provision that
governs ARD dispositions states in relevant part that when a defendant requests acceptance into
the program and agrees to its terms at a hearing,

> the stenographer shall close the record.  The judge thereupon shall
> hear the facts of the case as presented by. . . the Commonwealth
> [and] the defendant. . .and shall hear from any victim present.  No
> statement presented by the defendant shall be used against the
> defendant for any purpose in any criminal proceeding except a
> prosecution based on the falsity of the information or statement
> supplied.  After hearing the facts of the case, if the judge believes
> that it warrants [ARD], the judge shall order the stenographer to
> reopen the record and shall state to the parties the conditions of the
> program.

234 Pa. Code Rule 313 (2006).  Further, upon successful completion, the defendant may move
for dismissal and, if the charges are dismissed, "the judge also shall order the expungement of
the defendant's arrest record," id. at Rule 320 (2011).

On August 28, 2014 she filed an amended charge of discrimination with the EEOC and PHRC alleging retaliation and constructive discharge.  Id. at ¶ 32.

**III.**    **Discussion**

    **A.**    **Crawford's Disparate Treatment Claim**

It is well-established that the McDonnell Douglas burden-shifting framework applies to Crawford's race discrimination claims.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  As a first step, Crawford must establish a prima facie case of discrimination. To do so she must show that (1) she is a member of a protected class; (2) she was qualified for the position she sought to retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. See Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (Title VII); see also Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009) ("[T]he substantive elements of a claim under [S]ection 1981 are generally identical to the elements of an employment discrimination claim under Title VII.").

The same legal standards apply to Title VII and PHRA claims.  Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 409 (3d Cir. 1999).

If Crawford succeeds in showing a prima facie case, the burden shifts to Verizon to articulate some legitimate, non-discriminatory reason for its adverse employment action. McDonnell Douglas, 411 U.S. at 802.  If Verizon can do so, then Crawford must prove by a preponderance of the evidence that Verizon's purportedly legitimate reason is a mere pretext.  Id. at 804.

Verizon contends that Crawford cannot make out a prima facie case because she cannot point to "a single similarly situated employee – inside or outside her protected class – who was

treated more favorably," MSJ at 6, and she has offered no evidence that permits "an inference that Verizon suspended her because of her race." Id. at 7.

As to its first argument, Verizon argues that Amy Toth is not a proper comparator because she was not "suspected of engaging in criminal conduct of the magnitude that [Crawford] was charged with." Id. Verizon also argues that its three other employees who were allegedly involved in the scheme and whom the parties agree held positions different from Crawford's, were also suspended indefinitely, id. at 8, and that they are Crawford's comparators. Id. at 11. Verizon also contends that no reasonable juror could infer that Crawford was suspended because of her race as Marinari, whom Verizon claims was the decisionmaker, was unaware of Crawford's race when Verizon suspended her. Id. at 8; see also Reply Br. at 2. Accordingly, Verizon contends, Crawford can present no evidence that Marinari had "any invidious discriminatory animus." Id. at 9.

Crawford responds in opposition that she and Toth are similarly-situated because they held the same job title, were both accused of "engaging in dishonest conduct in order to benefit financially" and had the same ultimate decisionmaker -- Nicholson. Mem. in Opp. at 17.

Our Court of Appeals has not explicitly defined who constitutes a similarly situated employee. Though similarly-situated obviously does not mean identically situated, a plaintiff must demonstrate that she and her alleged comparators are alike in all relevant respects. See, e.g., Royster v. Laurel Highlands Sch. Dist., 994 F. Supp. 2d 701, 710 (W.D.Pa. 2014), aff'd, -- F. App'x -- (3d Cir. 2014). A determination of whether employees are similarly-situated takes into account such factors as the employees' job responsibilities, their supervisors and decisionmakers, and the nature of the misconduct engaged in. Wilcher v. Postmaster General, 441 F. App'x 879, 882 (3d Cir. 2011) (citing with approval Lee v. Kansas City S. Ry. Co., 574

F.3d 253 (5th Cir. 2009) and <u>Burks v. Wis. Dep't of Transp.</u>, 464 F.3d 744 (7th Cir. 2006)).

Crawford contends that she was never accused of defrauding Verizon -- in fact, the company reviewed her account records for two years looking for "unusual discount activity" and, by November 29, 2012, had concluded there was no evidence that she had manipulated any Verizon accounts. Mem. in Opp. at 6. By contrast she points to Toth, who was found to have applied unauthorized discounts to customer accounts. <u>Id.</u> at 17. In addition to her earlier discrimination complaints, Crawford relies on her union representative, Denise Christmas, who represented both her and Toth in disciplinary discussions with the company. Christmas stated in her declaration that Toth was observed applying unmerited discounts to Verizon accounts to earn cash bonuses or trips pegged to new monthly sales and upgrades. <u>Id.</u>, Ex. E, ¶¶ 20-23. As a result of Toth's violation of "sales integrity," <u>id.</u>, Ex. D (Black Dep.) at 97:23, Toth's supervisor (who reported to Nicholson) gave her a warning but did not suspend her. <u>Id.</u>, Ex. E, ¶ 24. According to Nicholson, the Security Department also investigated Toth. <u>Id.</u> at 17. Because of the union grievance filed on Toth's behalf, Verizon agreed to remove the warning from her file, a decision Nicholson made. <u>Id.</u>, Ex. E at ¶ 26.

Verizon urges in its reply that neither Crawford nor Christmas have first-hand knowledge of Toth's conduct, and their testimony is therefore inadmissible hearsay. Reply Br. at 4. It offers Toth's disciplinary record which, they contend, is "devoid of any evidence that could establish that Toth was accused of engaging in dishonest conduct" to benefit financially. <u>Id.</u> at 5. It also argues that Toth was never arrested, charged, or indicted for her alleged conduct. <u>Id.</u>

We do not consider either Crawford or Christmas's statements concerning Toth's conduct for their truth because our function is not to make credibility determinations or weigh evidence. Therefore, Verizon's hearsay objection is beside the point. But we must view the facts in the

light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  In that light, Crawford's account of Toth's actions is part of the existing record underpinning her discrimination claim -- which includes her earlier discrimination complaint and Christmas's testimony concerning her union representation.  And her account raises the issue critical to us at this juncture, that is, whether Toth is an appropriate comparator.

Determining who is a similarly-situated employee is a fact-intensive inquiry not readily susceptible to summary judgment.  Neither our Court of Appeals nor other Circuits have determined how closely a plaintiff and comparator must be matched or which factor carries dispositive weight -- the individuals' employment situation or the conduct that led to the adverse employment decision.[3]  Because of their identical employment situations, somewhat similar conduct and disparate discipline, Crawford has raised a genuine issue of material fact whether Toth is an appropriate comparator and as to whether she can make out a prima facie case that she was terminated under circumstances that give rise to an inference of unlawful discrimination.  For that reason, we will deny Verizon's motion for summary judgment as to this count.

Our decision is fortified by the ambiguity surrounding Marinari's role.  Verizon insists that Marinari decided to suspend Crawford and the other three employees, and that she was unaware of Crawford's race at the time of her suspension, in order to undercut any claim of "invidious discriminatory animus."  MSJ at 8, 9; see also SUF at ¶¶ 10, 11 (citing Marinari Dep.

---

[3] Compare Rioux v. City of Atlanta, 520 F.3d 1269, 1280 (11th Cir. 2008) (holding that the quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions); Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994) (the plaintiff must prove that all of the relevant aspects of his employment situation are "nearly identical" to those of the employees who he alleges were treated more favorably); and Lynn v. Deaconess Med. Ctr.-W. Campus, 160 F.3d 484, 488 (8th Cir. 1998) (holding that to show employees are similarly-situated, a plaintiff need only establish that he or she was treated differently than other employees whose violations were of comparable seriousness).

at 84:4-15).  But the same deposition testimony underscores Marinari's limited role in Crawford's suspension and supports Crawford's contention that Nicholson was the ultimate decisionmaker as to both her and Toth.[4]  See Mem. in Opp. at 3, 4.  Crawford also points to Marinari's deposition testimony stating, "I personally do not terminate or suspend.  I provide the advice.  It's local management that would follow through with that advice. . . .  The ultimate decision is left with local management on what to do."  Id., Ex. C at 22:21-24 and 23:5-6.  Marinari identified Nicholson as "local management."  Id. at 37:11-17.  Marinari also testified that after she spoke with Verizon security personnel and two union representatives, she called Nicholson about Crawford and told him "she needed to be, my advice to him is[,] to be removed from the workplace and suspended indefinitely."  Id. at 36:6-8.  (She also testified that she made the same recommendation to the other three employees' local management.  Id. at 105:18-23.)

Crawford also maintains that Nicholson suspended her without evidence that she had engaged in fraudulent activity (either at Verizon or Comcast), but did not treat Toth similarly.  Mem. in Opp. at 5-7, 17, 18.  She also offers Nicholson's testimony at the November 20, 2012 Grievance Meeting to show his antagonism toward her.  Id. at 19.

Whether Marinari or Nicholson was the decisionmaker as to Crawford is a question of

---

[4] Marinari testified at her deposition:

> A:    . . .The decision was mine.
> Q:    When you say the decision was yours, are you referring to the decision to suspend Miss Crawford?
> A:    And the other three employees, all four were treated the same.
> Q:    Earlier you testified that you don't make the decision, you make the recommendation.
> A:    Right.  It is a recommendation.  The decision to recommend that was to remove all four employees from Verizon property based on the criminal fraud charges.

MSJ at Ex. E, 84:2-15.

fact for a jury.  That issue of material fact, together with the animosity Crawford alleges

Nicholson displayed toward her, constitutes evidence that permits an inference that Verizon

suspended her because of her race.[5]  Because there is a genuine issue of material fact as to

whether Crawford has made a <u>prima</u> <u>facie</u> case of discrimination, we cannot conclude as a matter

of law that Verizon's proffered reason for suspending her indefinitely was not pretextual.  <u>See,</u>

<u>e.g.</u> <u>Burton v. Arkansas Secretary of State</u>, 737 F.3d 1219, 1232 (8th Cir. 2013) ("[T]he

comparator analysis was sufficient to create a genuine fact issue over pretext.") (internal citation

omitted).

### B.    Crawford's Disparate Impact Claim

A disparate impact violation arises when an employer is shown to have used a specific

employment practice, neutral on its face, but causing a substantial adverse impact on a protected

group and which cannot be justified as serving a legitimate business goal of the employer.

<u>E.E.O.C. v. Metal Service Co.</u>, 892 F.2d 341, 346 (3d Cir. 1990).  Unlike the disparate treatment

theory of liability, a claim of disparate impact does not require proof of discriminatory motive.

<u>See</u> <u>Int'l Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 335 n. 15 (1977).  A plaintiff must

show that some employment practice caused a significant statistical disparity.  <u>See</u> <u>Nat'l Ass'n</u>

<u>for the Advancement of Colored People v. N. Hudson Reg'l Fire & Rescue</u>, 742 F. Supp. 2d 501,

511 (D.N.J. 2010), <u>aff'd sub nom.</u> <u>N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue</u>, 665 F.3d 464

(3d Cir. 2011) (citing <u>Ricci v. DeStefano</u>, 557 U.S. 557, 577 (2009)).

---

[5] Crawford also contends that we can infer intentional discrimination because (1) Nicholson failed to follow Verizon's procedures by, <u>inter</u> <u>alia</u>, not alerting the union so that she could be represented when she was suspended, Mem. in Opp. at 7, 20; (2) Marinari and Nicholson engaged in a pattern of antagonism, <u>id.</u> at 19; and (3) the company failed to produce all relevant communication concerning Crawford, <u>id.</u> at 15, 16.  We need not go beyond our conclusion that Crawford has raised a genuine issue of material fact as to her <u>prima</u> <u>facie</u> case and consider these further arguments.

Crawford claims that Verizon has a policy as to employee arrests that has an adverse impact on its African-American employees.  Cmplt. at Count II.  She also claims disparate impact pursuant to 42 U.S.C. § 1981.  Id. at Count I.  Verizon asks for summary judgment in its favor as to Count I because Section 1981 prohibits only intentional discrimination and, as to Count II, because it contends both that Crawford failed to exhaust her administrative remedies as to this claim and that she cannot identify an established policy regarding the treatment of arrested employees or show that if there were such a policy that it has a "statistically significant disparate impact" on African-American employees.  MSJ at 12.

Turning to Verizon's first argument, exhaustion of administrative remedies is a threshold issue for discrimination claims.  Antol v. Perry, 82 F.3d 1291, 1295 n.3 (3d Cir. 1996).  Our Court of Appeals, reviewing the purpose of the exhaustion requirement, explained that "[t]he congressional policy underlying this framework was to resolve discrimination claims administratively through cooperation and voluntary compliance in an informal, noncoercive manner."  Burgh v. Borough Council of Montrose, 251 F.3d 465, 470 (3d Cir. 2001).   A claim is considered exhausted if it is "fairly within" the scope of the administrative complaint or the investigation that arises therefrom.  Antol, 82 F.3d at 1295.

Crawford's October 25, 2012 Charge of Discrimination, filed with the PCHR and EEOC, alleged a single count of discrimination, in support of which she stated:

> 9.    I was suspended by [Verizon Communications] on August 8, 2012.
> 10.   I am black.
> 11.   I was suspended on the basis of my race.
> 12.   The facts that show that my suspension occurred on the basis of my race are as follows:  On August 8, 2012, I received a call from John Nicholson, white, Office Manager.  Mr. Nicholson said that he was suspending me indefinitely for allegations of criminal fraud.  Mr. Nicholson denied me union representation and said that he 'had to do it.'  My name was involved in a Comcast investigation.  An employee of Comcast was charging me $150.00 yearly for Comcast discounts.  I was not charged

with fraud.

13. The explanation given to me for the indefinite suspension was that Mr. Nicholson 'had to do it';  I understood this to mean that it was because of the investigation of a Comcast employee charging people money in order to have discounts on the cable bill.

14. [Verizon's] explanation is untrue because:

    A. In February, 2012, the District Office observed and monitored Amy Toth, Consultant, white, for applying illegal discounts to customers' accounts.  Mr. Nicholson did not suspend Ms. Toth.  In September[] 2012, Verizon investigated Ms. Toth for applying illegal discounts to customers' accounts to close sales, as well as adding products and services to customers' accounts without their knowledge.  Ms. Toth did this in order to get a higher monthly bonus.  Ms. Toth was not suspended.  Mr. Nicholson is aware that Ms. Toth has applied illegal discounts.

    B. I was suspended indefinitely for allegations of criminal fraud while Ms. Toth, who is white, was not suspended for applying illegal discounts and adding unauthorized products to customer's [sic] accounts.

Mem. in Opp. at Ex. G.; see also MSJ at 13, 14**.**

Crawford argues that her disparate impact claim is within the scope of this administrative complaint because "[a]t the very heart of [p]laintiff's [c]omplaint and any investigation that the agency would do is [d]efendant's policy or practice on which it based its decision to suspend" Crawford.  Mem. in Opp. at 23.  She relies on Marinari's deposition testimony that the suspension recommendation hinged on such factors as the nature of the charge, its seriousness, the employee's position at Verizon, whether the alleged conduct occurred on the job, and whether Verizon's name was in the media, id.; see also Ex. C at 40:4-21, to argue that "the Court may reasonably expect an awareness on the part of the defendant that such allegations are likely."  Mem. in Opp. at 23 (quoting Morales v. PNC Bank, N.A., 2011 WL 3425644 at *4 (E.D. Pa. Aug. 4, 2011) (Buckwalter, J.)).

We cannot agree with Crawford.  In Antol, where the plaintiff argued that the gender discrimination claim he pressed in his lawsuit was "fairly within the scope of the EEOC

proceedings investigating his disability discrimination claim," our Court of Appeals held that whether the "core grievances" in the suit and administrative complaint were the same determined if the acts alleged in the suit fell squarely within the scope of the earlier complaint.  Antol, 82 F.3d at 1295.  Thus, Antol's disability discrimination charge did not fairly encompass a gender discrimination claim, as he failed to raise in the administrative complaint or in either the informal counseling stage or formal administrative process because neither the defendant nor the EEOC were put on notice of a gender discrimination claim.  Id. at 1296.  "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court."  Id.

Similarly, nothing in Crawford's bare-bones discrimination allegation would have put either the PCHR, the EEOC or Verizon on notice of allegations the defendant had a policy or practice that had sweeping disparate results.  There is no reference to adverse impact or, indeed, to Crawford's arrest -- let alone any Verizon policy or procedure with respect to arrested employees.  Accordingly, her administrative complaint does not fairly encompass a disparate impact claim.  Crawford has failed to exhaust her administrative remedies with regard to this allegation.  We will therefore grant Verizon's motion as to this claim in both Counts I and II.

Even had Crawford's disparate impact claim fallen fairly within her original complaint, she has failed to show a specific employment practice resulting in a statistically significant discriminatory pattern.

To prevail, a plaintiff must show a specific employment practice or a significantly discriminatory impact.  See Metal Services Co., 892 F.2d at 346.  A specific employment practice must be facially neutral, such as a height requirement or a passing score on a test.  See Latinos Unidos De Chelsea En Accion (Lucha) v. Secretary of Housing and Urban Development,

799 F.2d 774, 786 (1st Cir. 1986).  Our Court of Appeals has narrowed the disparate impact

analysis to circumstances where inferences may be drawn from "objective facts that are

generally not in dispute" rather than employment decisions based on subjective criteria.  Blunt v.

Lower Merion School Dist., 767 F.3d 247, 275 (3d Cir. 2014) (internal citation omitted).  A

plaintiff may meet that burden through statistical evidence, which must be "of a kind and degree

sufficient to show that the policy or practice in question" caused the disparate impact.  Id. at 299.

In any case, a plaintiff's burden "goes beyond the need to show statistical disparities in the

employer's work force.  Plaintiff must show a causal connection between the challenged policy

and a racially unequal result."  Spence v. City of Philadelphia, 2004 WL 1576631 at *4 (E.D. Pa.

July 1, 2004) (O'Neill, J.) (quoting Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 994

(1988) and EEOC v. Greyhound Lines, 635 F.2d 188, 193 (3d Cir. 1980)).  Proof of causation,

therefore, is essential for a prima facie case.

Verizon argues that it has no "uniform policy or procedure regarding employees who are

arrested." MSJ at 15; see also Marinari Dep. at 42:1-9.  It also maintains that Crawford can show

no statistical evidence that any identified policy created a disparate impact.

Crawford responds that the factors Marinari mentioned in her deposition constitute an

employment practice.  Mem. in Opp. at 24.  She also points to Verizon's disclosure that six

individuals were charged with theft over the past five years (four of whom were Caucasian and

two African-American).  Id. at 24, 25.  Both African-Americans and two of the four Caucasians

were suspended.  Of the Caucasians who were not suspended, one was charged with theft,

unlawful taking and disposition and the other with armed robbery.  Id. at 25; see also Ex. K.

The factors Marinari considered before recommending suspension are not fixed objective

criteria such as a height requirement or passing a certain test score, and so cannot constitute a

specific employment practice.  In the absence of a specific employment practice, Crawford

cannot show a causal relationship to the suspensions.  Finally, data concerning six individuals, in

the absence of a statistical analysis or expert, are not of the kind or degree sufficient to support

any allegation of significant disparate impact.  Crawford has thus failed to make a prima facie

case for a disparate impact claim.

We will therefore grant Verizon's motion for summary judgment as to this claim.

### C.    **Crawford's Retaliation Claim**

Crawford claims that Nicholson and Marinari retaliated against her for her November

2011 discrimination complaint by keeping her out of work -- an allegation she first made

internally at Verizon in November of 2012.  Mem. in Opp. at 26 and Ex. H.  She maintains that

the retaliation continued throughout her suspension until her June 19, 2014 constructive

discharge[6] because Verizon refused to reinstate her despite clearing her name in its own internal

investigation.  Id.

Verizon contends that, as with her disparate impact claim, Crawford has failed to exhaust

her administrative remedies because her retaliation claim is not within the scope of her initial

PCHR charge.  MSJ at 16.  To the extent that Crawford seeks to argue she has exhausted her

administrative remedies through her August 28, 2014 amended administrative complaint,

Verizon argues that her amended charge is untimely and does not relate back to her original

charge.  Id. at 16, 17.  Verizon also contends that Crawford cannot show that she would not have

been suspended but for engaging in protected activity nor can she show pretext.  Id. at 16.

As with Crawford's disparate impact claim, the threshold issue is whether her retaliation

---

[6] In her statement of facts Crawford gives the date as June 4, 2014 (the date on which she mailed
her resignation).  Pl. Resp. to SUF at ¶ 27.  On June 19, 2014, Crawford emailed her resignation
to her Team Leader.

claim is fairly within the scope of her administrative complaint of race discrimination or the subsequent investigation.  Our Court of Appeals has rejected the Fifth Circuit's per se rule that all claims of retaliation are "ancillary" to the original administrative complaint and therefore no further EEOC complaint need be filed.  Waiters v. Parsons, 729 F.2d 233, 237 n. 10 (3d Cir. 1984) (quoting Gupta v. East Texas State University, 654 F.2d 411 (5th Cir. 1981)).  Instead, our Court of Appeals adopted a case-by-case approach under which we must examine carefully the prior administrative complaint and the additional claim to determine whether a second complaint need not have been filed.  Robinson v. Dalton, 107 F.3d 1018, 1024 (3d Cir. 1997).  As we discussed above, our Court of Appeals has identified two circumstances under which subsequent events may be deemed fairly to fall within the original complaint, that is, when the later incident falls within the scope of the prior EEOC complaint or the investigation which arose out of it.  Id. at 1025 (citing Waiters, 729 F.2d at 235).  For example, in Waiters the employee alleged that her discharge was the product of the "same retaliatory intent" as she voiced in an earlier EEOC complaint.  729 F.2d at 238.  Our Court of Appeals held that a post-termination EEOC filing alleging retaliatory discharge was not necessary because the earlier EEOC investigation "clearly went beyond the specific problem alleged in the formal complaint" and encompassed the employer's entire conduct.  Id.  The Court concluded that the core grievance – retaliation – was identical and thus the allegations in the employee's complaint fell within the scope of the earlier investigation.  Id.

We therefore turn to Crawford's original EEOC complaint.  Mem. in Opp. at Ex. G.  She filed her original administrative complaint on October 25, 2012, more than a year after she lodged the original internal discrimination complaint which she now alleges gave rise to Verizon's retaliatory conduct.  Although Crawford states that her later November 2012 internal

complaint alleged that she believed Nicholson was keeping her out of work because of her 2011 racial discrimination complaint, Mem. in Opp. at 26, she made no such allegation to the EEOC. Instead, she alleged only racial discrimination without any mention of her Verizon complaint. Crawford does not contest Verizon's description that she failed to "check the 'Retaliation' box on her charge." MSJ at 16. See, e.g., Thomas v. St. Mary Medical Center, 22 F.Supp.3d 459, 471 (E.D.Pa. 2014) (Ditter, J.) (holding retaliation claim unexhausted because plaintiff failed to check the "retaliation" box and presented no facts in support of a retaliation claim).

Nothing in the original administrative complaint, therefore, could have put the EEOC on notice of Crawford's 2011 retaliation claim. Thus the retaliation claim she presses now did not fall within the scope of that EEOC complaint. Nor does she offer any evidence about the scope of that original investigation.

Crawford argues that her August 28, 2014 amended charge is timely because it shows Verizon's alleged retaliation through her June 19, 2014 constructive discharge. Mem. in Opp. at 26. She checked both "retaliation" and "race" and alleged constructive discharge, contending that Verizon retaliated by refusing to reinstate her despite clearing her name in its own investigation. Id. But her amendment does not help her here. The EEOC regulation governing amendment to charges of unlawful employment practices states in relevant part:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

29 C.F.R. § 1601.12(b).

Crawford's amendment cannot relate back to her original charge as the PCHR issued its

Dismissal and Notice of Rights on November 15, 2013 permitting her to file this suit, and the EEOC did the same on March 3, 2014 adopting the PCHR's finding that the charge had not been substantiated.  SUF at ¶ 31.  We agree with Verizon that there is no longer an original charge Crawford can amend.

Nor can we fairly construe Crawford's amendment as a new allegation of retaliation. Apart from checking boxes, she provided a cover sheet in her original administrative complaint stating she had filed a lawsuit regarding the allegations and was forced to constructively discharge her employment.  MSJ, Ex. A at pt. 23.  But the body of her complaint reiterates her original claim -- no mention of her arrest, suspension, or Verizon's internal investigation (whose conclusion, she argues, should have permitted her reinstatement).  Id.  She fails to offer any facts or allegations that could have put the agency or the defendant on notice about the nature of her retaliation allegations.  Nor is the core grievance identical, as her complaint alleges racial discrimination, not retaliation.

Finally, the result of this amended charge does not permit the conclusion Crawford presses, that "any investigation that the agency would do" would turn on Verizon's reason for suspending her.  See Mem. in Opp. at 23.  The EEOC's Dismissal and Notice of Rights states only that "No finding is made as to any other issues that might be construed as having been raised by this charge."  Mem. in Opp. at Ex. J.  Crawford offers no further detail about the EEOC investigation.  On the record before us, we must conclude that whatever investigation arose out of her administrative complaint failed to touch on any grievance of retaliation.

Accordingly, Crawford's original administrative complaint did not fairly encompass a retaliation claim and her amended charge failed to exhaust her administrative remedies with regard to this claim.  We do not consider, therefore, whether Crawford would have been able to

make out a prima facie claim of retaliation.

We will grant Verizon's motion as to Crawford's retaliation claim.

### D.    Crawford's Constructive Discharge Claim

Verizon failed to move for summary judgment as to Crawford's constructive discharge claim, raising its opposition for the first time in its reply brief.  Reply Br. at 9.

Although we have the power to grant summary judgment sua sponte, Celotex, 477 U.S. at 325, entry of summary judgment is generally proper only when the party against whom summary judgment will be entered had notice and an opportunity to come forward with relevant evidence to prevent summary judgment.  Gibson v. Mayor and Council of Wilmington, 355 F.3d 215, 222 (3d Cir. 2004).  When a moving party raises its justifications for the first time in a reply brief, we may likewise conclude that it has failed to properly raise the issue in its moving papers and may disregard eleventh-hour arguments as we have not (and will not) permit additional briefing by the parties.  See Santiago v. City of Vineland, 107 F.Supp.2d 512, 553 (D.N.J. 2000).

Verizon's belated argument is untimely and plaintiff's claim for constructive discharge will therefore go to a jury.

## IV.    Conclusion

For the reasons detailed above, we will grant Verizon's motion as to Crawford's disparate impact and retaliation claims and deny it as to her disparate treatment and constructive discharge claims.

An appropriate Order follows.

BY THE COURT:

_/s/ Stewart Dalzell, J.

22